**GALLARDO, Treasurer of Porto Rico, v. QUESTELL et al.**

Circuit Court of Appeals, First Circuit.
December 18, 1928.

No. 2242.

William Cattron Rigby, of Washington, D. C. (J. A. Lopez Acosta, of San Juan, Porto Rico, J. A. Hull, of Washington, D. C., and James R. Beverley, Atty Gen., on the brief), for appellant.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the District Court of the United States for the District of Porto ·Rico. No brief has been filed by the appellees. The appellant has done so and submitted an oral argument.

The bill of complaint alleges in substance that the defendants, the appellees, are copartners doing business under the firm name and style of Foreign Coffee Company; that they

are citizens of the United States domiciled and resident on the island of Porto Rico; that the defendant Juan G. Gallardo, is the treasurer of Porto Rico; that the complainants are engaged in the wholesale and retail business of selling coffee imported from the United States, and have invested in said business more than $15,000, and that their sales are over $50,000 annually, and they have a valuable and prospective business and good will in said business worth many times $50,000; that the complainants, in the operation of their business, propose and intend to sell, and will sell and resell, in Porto Rico coffee imported from the United States, subject to the joint resolution of the Legislature of Porto Rico approved June 5, 1919 (Laws 1919, Joint Resolution No 22); and that the defendant as the treasurer of Porto Rico has threatened to institute criminal proceedings against the complainants, and to attach, seize, and embargo their property in the event that they fail or refuse to submit to the defendant's construction of said resolution.

This resolution is set out, and in substance requires all dealers in foreign coffee, who sell or export the same, to affix to the sacks or containers in which the coffee is packed seals or stamps provided by the treasurer of Porto Rico; that all dealers to whom the act applies shall place on their places of business a sign of such form and size as approved by the treasurer of Porto Rico, upon which shall appear the number of their license and the words "Dealer in Foreign Coffee"; that no foreign coffee shall be sold, exchanged, donated, or exported unless the information expressed on the sign shall be stated on the container; and that if the coffee is a blend of foreign and Porto Rican coffees there shall appear upon the container a clear, distinct statement of the origin of the foreign coffee and its proportion of the blend.

In section 6 of the act it is provided that all dealers in foreign coffee shall keep a register furnished by the treasurer of Porto Rico in which they shall enter daily the quantities of coffee entering and leaving their establishments, the country from which it comes, and the names and domiciles of the vendors and purchasers.

Section 7 provides that the dealers in blends of Porto Rican and foreign coffee shall keep another book, in which shall be entered the quantities of coffee daily blended by them, the country from which the same comes, and the proportion in which each is used in the blend, the deliveries of the same, whether because of purchase or otherwise,

and the names and addresses of the vendors and purchasers or consumers.

Section 8 provides that the dealers in foreign coffee shall remit monthly to the treasurer of Porto Rico a copy under oath of the entries in their books.

Section 9 provides that violations of the act shall constitute a misdemeanor, and be punished by a minimum fine of $200, or by imprisonment for not less than 30 days, or by both, and in case of a repetition of such violation the same shall be punished by a minimum fine of $5,000, or imprisonment for not less than 3 months, or by both, and by cancellation of the license to deal in foreign or blended coffee. Original jurisdiction for violations of this act is conferred upon the district courts of Porto Rico.

Section 10 provides that the treasurer of Porto Rico is intrusted with the enforcement of the act and may promulgate regulations not incompatible therewith.

The bill further alleges that the defendant, as treasurer of Porto Rico, has threatened the complainants with criminal prosecution for the violation of this act; that the act "violates the Constitution of the United States and the interstate commerce clause because it establishes an arbitrary exemption in favor of the coffee of Porto Rico, working thus a discrimination against coffee brought from the continental United States; that said act violates the Constitution of the United States and the Organic Act of Porto Rico because it deprives your petitioners of their property without due process of law"; that the attempted enforcement of the act by the criminal prosecution threatened by the defendant as treasurer of Porto Rico will cause complainants irreparable injury, deprive them of their property and liberty without due process of law, and make it impossible for the complainants to carry on the business in which they have invested large sums of money, and that they have no adequate remedy at law.

The complainants pray for an injunction restraining the treasurer of Porto Rico from instituting criminal prosecutions against the complainants by reason of their failure to comply with said act.

Only two witnesses were heard by the court—Antonio Escudero, a member of the partnership, called by the complainants, and Antonio Pereira, an internal revenue agent and coffee expert of the government of Porto Rico, called by the defendant.

The complainant expressed its willingness to comply with the act, with the exception of

sections 6 and 7, which require keeping books in which should be entered the names of customers to whom coffee was sold and other requirements.

Upon hearing the District Court granted an injunction prohibiting the defendant as treasurer of Porto Rico and his successors and agents from enforcing the provisions of sections 6, 7, and 8 of Joint Resolution No. 22, approved June 5, 1919, and held that said sections are "illegal, unconstitutional, unreasonable and void."

In his answer the defendant denies that the amount in controversy exceeds the sum of $3,000, exclusive of interest and costs; denies that he has threatened to institute criminal proceedings against the complainants, or to attach, seize, and embargo their property in the event of their failure or refusal to obey the provisions of said joint resolution; alleges that said joint resolution is legal and valid, and clearly within the police power of the Legislature of Porto Rico; also that there is no federal question involved in the case, and that complainants have an adequate remedy at law by defense in any criminal proceeding which may be instituted.

The appellant contends in its brief and oral argument that the decree of the District Court should be reversed, and the case remanded to that court, with instructions to dismiss the same because (1) the case is moot; (2) for lack of necessary parties, the Attorney General and the people of Porto Rico; (3) because it does not appear that the jurisdictional amount of $3,000 is involved; and (4) for lack of jurisdiction in equity since plaintiffs have an adequate remedy at law in the defense of any criminal prosecutions that might be brought against them, and that, even if it had jurisdiction, the decree of the District Court, holding sections 6, 7 and 8 of said act invalid, is erroneous, "because it goes beyond the limits of the judicial power and trespasses upon the legislative discretion vested by the Congress in the Legislature of Porto Rico."

While the bill of complaint is inartificially drawn, it alleges with sufficient accuracy that the value of the plaintiff's business is more than $15,000, that the sale and resale of coffee is necessary for its operation, and that the enforcement of the act by the defendant will make it impossible for them to carry on their business in which they have invested large sums of money. As the prayer of the bill is to enjoin the enforcement of the act by the defendant, and it is alleged that, if not granted the complainants' business will be destroyed, which has a greater value than $3,000, we think that determines the amount in dispute. Packard v. Banton, 264 U. S. 140, 142, 44 S. Ct. 257, 68 L. Ed. 596. In this case, as in the one cited, the value of the right of complainants to carry on their business "freed from the restraint of the statute" exceeds the jurisdictional amount.

The District Court had jurisdiction to restrain criminal prosecution of the complainants if it is determined that the resolution is unconstitutional on the ground that the prevention of such prosecution is essential to the safeguarding of property rights. Truax v. Raich, 239 U. S. 33, 37, 38, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255. The right of the complainants to purchase and sell foreign coffee is a property right guaranteed by the Constitution of the United States and the Organic Act of Porto Rico (39 Stat. 951), and whether the act of the Porto Rican Legislature of June 5, 1919, interferes with this right is a federal question. See Terrace v. Thompson, supra, page 214 of 263 U. S. (44 S. Ct. 15).

The treasurer of Porto Rico by the act is charged with the duty of its enforcement and authorized to promulgate regulations not incompatible therewith. He was therefore properly made a party to the bill, and it was unnecessary to join the Attorney General or the people of Porto Rico.

Congress has conferred upon the Legislature of Porto Rico general legislative power, reserving to itself the right to declare any act passed by it null and void. In the exercise of the authority conferred upon it the Legislature has enacted this law. In accordance with the authority conferred upon it by the Organic Act, the Legislature of Porto Rico could for the purposes of taxation make any classification which was reasonable, and if all parties within the classification created by it were subject to the same tax, neither the Fourteenth Amendment to the Constitution of the United States nor section 2 of the Organic Act of Porto Rico (48 USCA § 737) was violated; nor would the equality provision of taxation be destroyed, because all of the same class are treated alike. Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 37 L. Ed. 599; Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596.

It was held in this circuit, in West India Oil Co. v. Gallardo (C. C. A.) 6 F.(2d) 523, that a tax imposed upon the sale or use of automobiles is not an import tax, but an excise tax on sale or use, under section 58 of

the Organic Act, known as the Jones Act (39 Stat. 968).

The ground upon which the District Court rested its decree seems to have been that this resolution of the Porto Rican Legislature was unreasonable. With its wisdom or reasonableness the courts are not concerned, and are without jurisdiction to interfere upon that ground. If it is an unwise law, the taxpayer has his remedy by an appeal to the Legislature for its amendment.

The decree of the District Court is reversed, and the case is remanded to that court, with instruction to dismiss the bill.

ANDERSON, Circuit Judge, concurs in the result.