[Civ. No. 17116.   Second Dist., Div. Two.   Oct. 10, 1949.]

BUSINESS WOMEN'S ASSOCIATION (a Nonprofit Corporation), Appellant, v. GLEN KNIGHT et al., Respondents.

Nathan Newby, Jr., Gavin Craig and Carl Yanow for Appellant.

Lee Schwartz for Respondents.

MOORE, P. J.—The question for decision is whether the judgment of a state court is void by reason of its award of treble damages as provided by the Emergency Price Control

Act of 1942 [56 Stats. 23; 50 U.S.C.A.App. § 901 et seq.], herein referred to as the act, where the party affected by the order of the O.P.A. has not complied with the procedure outlined in the act for vacating such order.

Appellant, Business Women's Association, herein sometimes designated "BWA," owns and occupies a 10-room house in Los Angeles which it utilizes as a clubhouse for hardship cases of indigent women. In November, 1946, respondents and others filed in the municipal court of the city of Los Angeles an action against appellant for overcharges of rent. The court found that appellant did not operate its premises as a nonprofit California corporation and had failed to comply with O.P.A. rent regulations; that it "had collected certain named sums from each of plaintiffs in said action" and entered judgment against appellant for treble the amounts which those plaintiffs had paid to BWA.

On August 20, 1947, appellant filed the instant action to set aside and annul such judgment on the ground of lack of jurisdiction. By its amended complaint appellant alleged that the act did not empower the administrator of the Office of Price Administration "to regulate the charges or prices to be charged for the rental of rooms in a structure owned and operated by a nonprofit, benevolent or educational institution"; that appellant was a nonprofit corporation and therefore did not "come within the scope and regulation of the Rent Control Act"; that the municipal court "had no authority or jurisdiction to entertain said action." A general demurrer to appellant's complaint having been sustained without leave to amend, this appeal is taken from the ensuing judgment of dismissal.

### CHARACTER OF APPELLANT CORPORATION NOT INVOLVED

Appellant's character as a nonprofit corporation is not involved. In 1942, pursuant to the act, the Federal Housing Administrator issued a regulation governing rooming houses, residential hotels, etc. Paragraph 1388.1231, section 1b, subdivision 5 of such regulatory order provided that if the administrator certifies on the written request of the landlord that a club which occupies rooms is a nonprofit organization and is so recognized by a writing of the Bureau of Internal Revenue, and rents its rooms to members only and to their guests who are members of bona fide clubs having reciprocal arrangements for the exchange of privileges, and is otherwise operated as a bona fide club, the regulation shall not apply to the hous-

ing of such nonprofit club. The subdivision is emphatic that the exemption of the rooms of such club is created only after the administrator's compliance with specified requirements. Inasmuch as appellant had not been certified by the housing administrator as being exempt from the requirements of the act at the time the municipal court's judgment was entered, appellant is entitled to no consideration as a nonprofit club.

## MUNICIPAL COURT HAD JURISDICTION TO ENFORCE THE REGULATION

While appellant admits that under article III, section 2 of the federal Constitution, Congress may authorize magistrates or courts of a state to enforce a federal statute yet it blandly contends that the municipal court had no jurisdiction to entertain the action brought by respondents against appellant to enforce payment of penalties prescribed by the price administrator under the act. It derives this erroneous concept from that provision of the act creating the Emergency Court of Appeals to determine the validity of any regulation or order issued under the act. Section 924, 50 United States Code Annotated [56 Stats. 31], provides that no other court shall have jurisdiction to consider the validity of any such regulation or order to enjoin or set aside wholly or in part any provision of the act authorizing such regulations or orders. But section 924 applies only where a party affected by a regulation of the administrator has followed the prescribed procedure for attacking it. The provisions thereof do not support an affected party who has ignored the requirements to be followed by one who desires to be relieved from an oppressive order. Neither does the section (924) inhibit the municipal court from entertaining actions on the claims of tenants who have been charged higher rentals than those fixed by the O.P.A. as the maximum amounts to be charged for the property occupied by them. But despite the fact that neither section 924 nor 925 contains a specific prohibition against a *state* court's functioning under the act, appellant contends that the judgment of the municipal court awarding the penalties sued for is void.

Such contention finds no support in either the federal Constitution or the decisions. It was contended by potent voices in the Constitutional Convention that state courts should arbitrate all controversies. In the final outcome of the contest over a separate federal system of trial courts the best that Madison could obtain was the clause permitting Congress

to "ordain and establish inferior courts." As pointed out in *Miller* v. *Municipal Court* [22 Cal.2d 818, 142 P.2d 297], all the acts of the early Congresses provided for suits to be "laid" in the state courts. (See revenue laws of 1791, 1794, 1797, 1799, 1806, 1808, 1813; National Bank Act of 1864; Post-Office Act of 1799.) The law governing this subject is summed up in the language of a brilliant opinion, to wit: "The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief . . . rights arising under the Act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion." (*Mondou* v. *New York, N. H. & H. R. Co.*, 223 U.S. 1, 47 [32 S.Ct. 169, 56 L.Ed 327].)

█ Because the Emergency Price Control Act is a legitimate exercise of a "well-nigh limitless" power vested in Congress to declare and wage war (*United States* v. *Macintosh*, 283 U.S. 605 [51 S.Ct. 570, 75 L.Ed. 1302]; *Henderson* v. *Kimmel*, 47 F.Supp. 635) and because the federal statutes have covered the field, appellant maintains that "all state laws pertaining to such subject matter are displaced," citing *Kelly* v. *Washington ex rel. Foss*, 302 U.S. 1 [58 S.Ct. 87, 82 L.Ed. 3]. The question of state statutes is not pertinent to the issue at hand. What concerns appellant is whether it has complied with prescribed procedure and rules of practice and whether the enforcement of this act of Congress can be effectuated by a state court. This is answered by section 205(c) of the act which specifically provides that state courts shall have jurisdiction of all other proceedings and subdivision (e) provides that an enforcement action by either "the buyer or the Administrator . . . may be brought in any court of competent jurisdiction." █ It is answered also by the sweeping decision of *Miller* v. *Municipal Court*, 22 Cal.2d 818, 851 [142 P.2d 297], wherein it was held that "[t]he existence of jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against the implication."

█ It is also contended that by reason of the language of section 204(d) of the act no tribunal other than the two federal courts there specified can determine the validity of a regulation or order of the Office of Price Control. There is no question as to the exclusive jurisdiction of the Emergency

Court of Appeals to determine the validity of a regulatory order. But such exclusive power does not deprive "any court of competent jurisdiction" of the power to enforce an order of the administration, the validity of which has not been questioned. (*Miller* v. *Municipal Court, supra,* 828; *Lockerty* v. *Phillips,* 49 F.Supp. 513; sections 203, 204, 205 of the act; 50 U.S.C.A.App. §§ 923, 924, 925.) Such matters may be determined in an enforcement action by any court having jurisdiction of the subject matter. (*Bowles* v. *Wheeler,* 152 F.2d 34.) In the cited case the judgment of dismissal was reversed with instructions to hear and determine the issue and to ignore the defendant's objection to the validity of the order in question. Such order was presumed to be valid until attacked by appropriate proceeding for that very purpose.

The act prescribes a procedure for testing the validity of an order of the administrator. It provides for (1) filing protest by any person subject to the regulation made by the administrator; (2) action thereon within 30 days; or (3) he shall hold a hearing; (4) decision within 30 days after filing protest; (5) review by a board; (6) petition for mandatory relief to the Emergency Court of Appeals by a protestant aggrieved by undue delay (56 Stats. 31, 50 U.S.C.A.App § 923, p. 363; also, see, rule 14 of Emergency Court of Appeals, 50 U.S.C.A.App. p. 395; (7) filing of complaint by a protestant dissatisfied with the administrator's decision denying his protest; (8) "*Upon the filing of such complaint* the court shall have exclusive jurisdiction to set aside such regulation, order, or price schedule" (§ 924[a]) and "to determine the validity of any regulation or order," etc. (§ 924[d].) Subsequently, the act was amended by providing that within five days after judgment in any civil proceeding brought under section 205 the defendant may apply to the court in which the action is pending for leave to file in the Emergency Court of Appeals a complaint containing his objections to the validity of any provision alleged to have been violated by the defendant; thereupon, that court may within 30 days enjoin or annul the order (§ 204[e]) as amended by § 107[b] Stabilization Extension Act of 1944 [58 Stats. 639, 50 U.S.C.A.App. § 924]) and in an enforcement action the court must stay the proceeding during the period for filing in the Emergency Court of Appeals or during the pendency of a protest filed prior to the commencement of the enforcement action and stays shall be granted only "upon application made within five days after judgment." Only in the event the order in question is

held to be invalid may the enforcement judgment be vacated.

■ No such procedure was followed by appellant during the pendency of the enforcement action in the municipal court or within five days after judgment. Instead, it undertook there to prove the invalidity of the administrator's action in establishing maximum rents and to show that the act does not apply to the owner of the property. The municipal court properly rejected such attempts. (*Miller* v. *Municipal Court, supra,* p. 850.) It could not review the order of the administrator. Not even the Emergency Court of Appeals can set aside orders regarding renting prices until after a protest has been filed with the administrator. No protest was filed claiming that appellant was exempt pursuant to paragraph 1388.1231, section 1b, subdivision 5 of the regulatory order. The municipal court was obliged to presume the validity of the order.

■ Since appellant never protested the established maximum rent by compliance with the procedure outlined in the act, it was not entitled either to a trial on the merits of the order or to a stay of further proceedings in the municipal court. Therefore, the judgment of that court is not void and the demurrer to appellant's amended complaint herein was properly sustained.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.